The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Thank you. Please be seated and welcome. All right. We will hear first our first case, United States v. Jordan, and Ms. Schroep, whenever you're ready. Good morning, Your Honors. My name is Lee Schroep, and I'm here with Marcia Schein, and we represent Zavian Jordan, the appellant in this direct appeal to this court. Because this court asked for supplemental briefing on the First Step Act issue in this case, I thought we would start there and then move on as time permits. As this court is aware, in December of 2018, the President, in the First Step Act, as part of the First Step Act, Section 403 clarified that when someone is indicted of a 924C conviction, he has a chance penalty for a second 924C conviction if he had been previously indicted and convicted. So the stacking that had been happening, it clarified, was not what was originally meant by that. Mr. Zavian Jordan had two 924C convictions in this case. The first one resulted in a five-year additional sentence, the second one, a 25-year additional sentence. While he had been sentenced, his direct appeal was still pending when the First Step Act was enacted, and we believe the First Step Act applies to his case for four reasons. The first is in the very title of the First Step Act. It says it's a clarification. The First Step Act is some 150 pages, and the word clarification is only used once. As this court recognized in Brown v. Thompson, which is 374 and 3D253, clarifications apply to cases that are on direct review. Likewise, circuit courts around the country have applied clarifications to the sentencing guidelines when the case is on direct review, including in the 11th Circuit case. Counsel, whatever we call it, it in essence overruled the Supreme Court's prior decision, right? You can call it what you want to, but it overruled the Supreme Court's decision that you do stack. The Supreme Court had read the earlier statute reading the language of it, but as the dissent in that case, I believe it was Deal v. United States, said the language wasn't very artfully drafted. And so this statute then clarified what was originally meant. And if you look at the Congressional record from 1968 and the Sponsors Bill of the First Step Act, it's clear that that could have been the original intent, and we should give great deference to the fact that Congress said it's clarifying. So if we, what's your, if you have the word clarification in the title, which I grant you, obviously it says that, and assume we think the text of Subsection B suggests it's not a clarification. Should the text prevail or the title prevail? I think in that situation you should read them both together. I mean, Congress used the word clarification for a reason. In 150 pages they used enhanced, reduced. They made clear they were making changes. So to the extent possible, you should try to read those together. And so I know you're talking about the sentence-imposed language, I'm assuming. You can still read that consistent with the clarification language if you read that to say if the sentence was finally imposed, which in this case the sentence isn't final, it's still on direct review. But the section, right, the substantive part of the section does use final when it means final, right? That's how they explain how there's going to be no more stacking. You have to have a prior conviction that's already become final. I mean, isn't the fact that they used final in one, in Subsection A and then not in Subsection B pretty good evidence that they didn't mean final in Subsection B? Well, when you look at other statutes in the code in general, including 18 U.S.C. 3621, it's clear Congress sometimes used sentence-imposed to mean final, finally imposed. And that 18 U.S.C. 3621 is a statute that says you should serve the sentence imposed in the Bureau of Prisons. Clearly they don't mean if this court overturns the decision, you're still serving that sentence. No, no, but that, so I think that gets it exactly backwards. I think your example goes exactly to Judge Harris's point that you serve the sentence imposed in the Bureau of Prisons. And so that means once the sentence is handed down while pending appeal, you go to the Bureau of Prisons. Now, if the sentence is vacated by the Court of Appeals, well, it's no longer imposed. That's what vacation of a sentence means. Like, it doesn't exist anymore. And so that doesn't suggest that you are being held when it's not final. That instead suggests that while it's pending on appeal, you go to the Bureau of Prisons. Although while you're on direct appeal, you can still get an appeal bond because the sentence hasn't been finally imposed. We don't always give those, but it's almost like a replication of bond. But if someone is literally sitting in prison serving a sentence, I mean, hasn't the sentence been imposed? Otherwise, why are they there? I mean, it's been stated, but it hasn't finally been imposed until this court looks at a case, a conviction, and therefore the sentence isn't final. This court can reverse it entirely. It can remand it in part. It can just say start at sentencing again, but it's not final. And that's why. So is that also true for habeas 2255? So like, I mean, they could start over at 2255, or maybe we do a second habeas. Or maybe we do a 2241 or quorum novus, right? I mean, it seems like to me, in some sense, your definition of final is a standard that's never met. Well, the Supreme Court has drawn a pretty bright line rule for their precedent. And it's been drawn for this court's precedent that your conviction isn't final when it's on direct review or seeking cert, or the time to seek cert has expired. And that was said in Griffith versus Kentucky, which is a United States Supreme Court case. It's a pretty bright line rule. Once cert is expired or time to seek cert is expired, then your conviction is final. And while that sometimes may seem unfair to people, that's a bright line rule. Direct review, your conviction's not final. After that, after this court and the Supreme Court has at least been given an opportunity to look at the case, it is final. Can I ask you a question? Since we ordered the supplemental briefing in this case, there's been a lot of case law coming down on this. And I think all of the cases say that the First Step Act is not retroactive to sentences that have already been issued by the district court but are still on appeal. How do you want us to address those cases? So most of the cases I have seen, and I've looked all the way up until last night, are 2255s or 2241s. There is, and I haven't found a court of appeals case yet to address Section 403. There was a Pearson, I think it was out of the Seventh Circuit, addressed it 401, but that one had a very different title. It said it was restricting and enhancing a sentence. It wasn't clarifying the sentence. And in the Northern District of Illinois in United States, I'm going to butcher their name, Uriarte, U-R-I-A-R-T-E, which is a 2019 Westlaw 1858516, was a situation where the Seventh Circuit remanded for resentencing not on the First Step Act. And in that case, the Northern District of Illinois allowed him on remand to get the benefit of the First Step Act, Section 403, the exact section we're talking about. There's the Eleventh Circuit writing Garcia, although I think that was unpublished, and maybe that's your answer. Correct. Okay. And was there a recent Third Circuit decision? I believe Third Circuit in Evales, but it too was looking at the same thing that Pearson was looking at, which was Section 401, which again has a very different title. It wasn't clarifying. It made clear it was changing the law. And in those cases, they think we can distinguish those cases. Is there anyone, was there any case, district, or circuit that supports your position that it is retroactive? At this point, I don't think any circuit has specifically spoken on that. I know it was before the United States Supreme Court in United States v. Richardson, which is number 18-7036, and the government made this argument. The Supreme Court remanded it to the Sixth Circuit, so they're looking at the same issue right now. Aside from the clarification in the sentence imposed reasoning, we believe the same reasoning that applies to Supreme Court precedent and this precedent should apply. When cases are in the pipeline, they get the benefit of the law. Otherwise, the United States Supreme Court recognized that in Ham v. City of Hill Rock, which was when the Civil Rights Act was enacted, and the defendant in that case had been convicted before it was enacted, but his case was still in the pipeline. And the Supreme Court said he should get the benefit of that pipeline decision. That pipeline law changed the law because the law was no longer, I think the word was vivifying, what he did. And in this case, the law has clarified that Mr. Jordan, if he's guilty of no 924C offense, is only guilty of one 924C offense. So he's no longer guilty. Wait, that's, just to be precise, that's not exactly right, because he could be guilty of two, and you still stack them. It's just that the second one's not 25 years. So he just had two five-year 924Cs. Right, under the facts of his case, which we argue in a separate section, we believe that there's only- Actually, but on the argument you're making, you do still stack. Your argument on the first step back, sorry, the Fair Sentencing Act, first step back, is that the second conviction, putting aside your separate argument, is just a five-year additional, not a 25-year addition. I believe under the way the act's written that that could be read to do that. What do you mean, could be? I'm just, help me understand, maybe it doesn't matter that much here, but you think there's an argument that if your first step back applies, that instead of 30 years, he gets five years? In this case, yes, that's what I believe happens, but that's also because of his second 924C argument. But what I'm asking is on the first step back argument alone, if you prevail on that argument and no other argument, on remand, would he get five years or 10 years? And I think that we would still have to look at the split in the circuits, that under this circuit's precedent, yes, he would. I think some circuits disagree and think there has to be proof of more than one gun on more than one occasion. No, but that's the second argument. I'm talking about just the first step. Maybe we've sort of beat this horse enough, but if you prevail only on the first step act, is it five years or 10 years? I believe under this circuit's precedent, it would be 10 years. Can I ask you a question about your Sixth Amendment argument before you run out of time? Yes. In particular, it seems like you have two different Sixth Amendment claims, and I want to talk about the one where you're contesting admission of the officer's testimony and introducing the transcript of the phone call that he instructed the confidential informant to call his supplier before he made the call. Did you object to that part? I was not the trial counsel, but trial counsel did file a motion in limine asking that the whole call, all references to the call, be excluded. And as we argued, we believe that that was assertive conduct. If he was told, call your drug dealer, the next thing he does is pick up the phone and call Mr. Jordan. The implication, the only implication that can be drawn is that Mr. Grant said, Mr. Jordan's my drug dealer, and because Mr. Grant didn't testify, he wasn't able to confront that. The briefs are confusing on this, so there's nothing to infer here. You're not arguing that there's any inference. He testified directly to something that you think is the equivalent of a verbal statement. Correct. He said, I told him to call my drug dealer, and then he picked up the phone. The only question is whether making the call counts as assertive conduct. Correct. All right, and the First Circuit says clearly it does not in Bailey, right? Correct. Okay. Is there any way for us to distinguish Bailey, or do you just want us to say, which we totally can? That's what the First Circuit thinks, but we are not persuaded. I think in Bailey, and I have to refresh my recollection of all the facts, I don't think it was as clear that this was exactly this. Okay. Yeah. Well, then, I mean, I guess I've answered my own question. We think under Crawford versus Washington that that could not be correct. He should be able to confront. This was the main evidence. This is how they even started to look at him. He should be able to confront this statement, especially when then you look at the call. But her question is, what is the statement, right? I mean, that's sort of what she's, I think what she's getting at is, you said they should be able to confront this statement. What is the statement that you're... The statement is what you must infer was said, Mr. Jordan is my drug dealer. No, no, that's different. There are other cases where you literally infer that the verbal statement was made. That's what's going on in that second circuit case. I thought you were saying there's nothing to infer. He directly testified that he picked up the phone, he made the phone call, and it's that act. Correct. That is the equivalent of a verbal statement. Correct. Okay. Yes. The assertive conduct is the equivalent of a verbal statement. Okay. And then when you go on and look at the call without that statement, the call doesn't mention drugs. So without that statement, the call, then, if you don't assume he said by his conduct, I am calling my drug dealer, the call doesn't ever mention the sale of drugs. So then you are left, the call loses relevance then. So is it your position that any time a police officer instructs a confidential informant to do something and the informant does it, that action is an assertive, is assertive conduct counts as a statement? So if someone says, go make this controlled by, like, no one can test, you know, the fact that he then goes and buys drugs is off limits. It's a statement. If they say, go make a controlled by, and then witness the controlled by, witnessing of the controlled by would come in, but not the fact that he said, this is who I get my drugs from by his conduct. Wait, explain that again? Say that one more time? I mean, the officer is... Because if I say, I mean, I think this is her question. If an officer tells an informant, go do a controlled by, here's $100. I then watch the controlled, the confidential source, go meet with Marvin and have an exchange. I'm skipping you, don't worry. It's more likely with me. He goes and meets with Marvin and the police officer observes the hand-to-hand and then comes back and whatever happens at that point. You agree the officer can testify, I gave him $100. I then watched the confidential source walk across the street to Marvin's house. On Marvin's porch, I saw them do some sort of exchange. Obviously, I wasn't there, so I don't know what was said, but I saw them do some exchange and then the source came back. All of that comes in, right? I'm out of time. May I have a minute to answer? Please. Yes, but that's a little bit different than what we believe happened here. Why is that different? Because here, it wasn't, here's $100, go. Like here, he said. Here's a phone, call your supplier. But there was a clear implication from the testimony is there was something said and that wasn't, I mean. How is that, that's not what I got from the testimony. I got that he said call your supplier and he picked up the phone and made a call and that's the part that you think was the equivalent of a statement. Nothing had to be said. It was making the call. But under the previous scenario just given, it was here's the money, go. They didn't, he didn't have to say this is the person. He went and the officer observed the drug deal. This one, the statement had to be, this is my drug dealer for the conversation to make sense. He didn't think to observe the sale. But the other one would be the same thing. He wouldn't say go, you know, here's $100, go to the other person without any context that they had some potential relevance to a drug transaction. I mean, it seems to me this is an awful, awful fine line. But the difference between the scenario is then he actually sees a drug sale. Here after the affirmative statement, the affirmative action, what they hear is a conversation where drugs aren't mentioned. That's a separate issue, a little bit of a separate issue is whether the statement on the phone call comes in. We're talking about before the statement. I don't see any difference in those things before the actual tape is played. What the officer observes in a hand-to-hand is what the difference is. In this case, you can almost exclude the officer's statement, go to your drug dealer and he could just say I saw a hand-to-hand sale. Like you don't need that first part. But a hand-to-hand is always a little ambiguous. Like you don't know exactly what's being exchanged. I thought that was part of Judge Richardson's hypothetical. What you actually see is a little ambiguous. What makes it work for the prosecution is the statement, go to a controlled buy. And the fact that the person, the confidential informant responded to that statement with this conduct, which I think under your theory has to be assertive conduct. But in a hand-to-hand, they come back with the drugs. So you still have, what we have here still is a call where we understand the officer believes he was talking in code. But for the jury to make that leap, you needed that assertive conduct. Under that scenario, you still don't need the assertive conduct for it to make sense. Okay, thank you. If you don't mind, can you start with this issue rather than the first step, that issue? And here's where I want to sort of get some help from you, frankly. You obviously believe that this is not assertive conduct or that we shouldn't infer it. Let me give you a slightly different hypothetical that I think would be problematic. I want you to help me understand why they're different. So a police officer says, I met with an informant and I asked him who his supplier was. I can't say what he said, but the prosecutor then says, all right, so what did you do next? I went to Marvin's house, right? The clear implication of that is that the informant said that his drug supplier was Marvin. That, maybe it's not a confrontation clause problem, but tell me why that is different from the scenario we've got here. Well, Your Honor, I do think that what you alluded to is an issue. It can testify as to what you observed. Whether a bit of conduct is assertive, at least under the hearsay rule, is ordinary function of whether it was intended as an assertion. It's usually limited to things like, this is okay. Something along those lines. It's intended that way. Not simply following a direction and saying, what did you observe? I actually think that if you said, what did he do next? I watched him go to Marvin's house. Unless there's some unusual circumstance that suggests, let me show you. I want to communicate to you where I'm going. That's the purpose of the action. That's not going to be assertive conduct. I do want to answer. I would have thought that part of the answer to Judge Richardson's hypothetical is that, I mean, there are these cases saying there are circumstances under which you can infer an actual verbal statement was made. And from Judge Richardson's, you probably can infer the making of an actual verbal statement. There's no question of assertive conduct. You infer from what the witness testifies that the confidential informant said, my guy is Marvin. Yes, Your Honor. And I think those are circumstances. I don't, I do think that is a circumstance that might arise in Judge Richardson's hypothetical. I don't think it arises here for a couple of reasons. One. I think your colleague just also conceded it doesn't arise here, but. Right. And I think that's true. And I actually, I believe he didn't actually say, he's Xavier and Jordan. I think he called him Tay and Ace at some point in time. And then later he identified him in a, in a lineup. But you, at no point did you, was there even the allusion to the idea that the informant grant said in response to call your supplier, I'm going to call Tay. Correct, Your Honor. There's none of the, that was never in front of the jury. And I don't believe that's how the conversation went with the police officers. And when you read the trial testimony, it says call your supplier. And in essence, I observed him dial a phone number. Yes. And then I'll listen to a discussion. And I know, and you knew their voices. And I want to answer Judge Harris's question too. This issue was not objected to. What I understood the argument to be was the contents of the phone call. And counsel below strenuously objected to that, filed a motion to eliminate, and then was very careful during the trial to preserve that objection. When it was introducing the phone call, I object, Your Honor. I just want to note for the record, I know you're ruling. But on page 173 and 223 of the joint appendix, multiple times, we asked Detective Bridges about, you know, you told him to call his supplier, correct? Yes. No objection, either time. So I think that particular issue is on plain error. But you didn't, did you say that in your brief? Your Honor, honestly, I didn't. Yeah. And it was because I understood the argument to be about the contents of the phone call. Okay. I did go further and say, you know, there's these other parts, like the statement was a direction that was not hearsay, that was not a confrontation problem. And I did note that. But I actually, honestly, I didn't understand that to be the argument in the opening brief either. Right. It doesn't really show up till the reply brief. You're right. Can I get you to switch gears and talk about the merger argument? Certainly, Your Honor. And let me get to the question, because I'm, yeah, I've read Kahn, and I think I understand your position with respect to that. I'm really asking about footnote number 11 in Kahn, which seems to suggest that one of the issues that justifies that is that we have a bench trial. And with a bench trial, you can confirm, if you need to get something. Yeah, yeah, yeah, that's right. But it seems to suggest that one of the reasons in Kahn that we can be sure that there was a compliance with the law is it's a bench trial. And obviously, we don't have that in this case. Does that footnote matter at all in determining whether Kahn applies here? I don't think so, Your Honor. And there's actually another footnote in Kahn that I think answers your question fairly directly, which is nine. The dissent in Kahn raised specifically the issue that the defendant is raising today, which is you need evidence of multiple uses for there to be multiple sentences on 924C. And what the majority said was, no, because Kahn was convicted of four predicate crimes of violence, not a single predicate offense, we don't need to count uses. It wasn't just a matter of... I get that. I don't mean to cut you off, but I get that we don't need to count uses in terms of what Kahn says. What I'm trying to get at is that footnote, which seems to suggest one of the concerns that we have here is whether we can tell whether a jury is following the law. And they point out that in Kahn, it was a bench trial, and we don't have that concern. Here, we're in a situation where that's not the case. Does that footnote create any problem for you? No, Your Honor. And I think the reason... And I don't mean to be circular or anything, but I think the reason I point to count nine is because if there were not evidence of multiple uses as the defendant or as the dissent in Kahn intended, then it wouldn't matter one way or another. Then the district court got it wrong by imposing multiple sentences on 924C, no matter how that district judge articulated it. So I don't think it would change the outcome. At the end of the day, you don't need to count uses. It's not literally count them. There don't need to be multiple uses. If there are multiple predicates. I do want to note, Your Honor, that we charged this case the way we did only because there were multiple possessions of multiple guns at multiple times. The indictment charges two different guns, right? It does charge two different guns. It does charge multiple guns in the 922G count. It doesn't... Those guns are not specifically enumerated. But it doesn't distinguish them in the C counts, right? I mean... Right. You could well have done that, right? I mean... We could have. In order... Because this defendant has not challenged Kahn. Kahn's inconsistent with some other circuit's unit of prosecution analysis. And you could have included in the 924C enough information for the jury to make the finding. One's in the car. One's in the house. We could have, Your Honor. And I can also tell you, we would not have objected to the jury verdict form or instruction that they've requested had they brought it up in a timely fashion. We wouldn't have objected to that because that was our theory of the case. He had one gun with him when he was found with cocaine. He had another gun at the stash house where he admitted he was packaging cocaine that day where we found heroin. So maybe you can choose not to answer this. But why, right? If we've got Kahn, and you can take as a premise of my question, I think Kahn's wrong. But if we've got Kahn, why are you only charging it where there are multiple uses? Because Kahn seems to tell you, maybe the footnote notwithstanding, Kahn seems to tell you, no, no, no, it doesn't matter. One use, two predicates, two 924Cs. So why would you limit yourself when Kahn gives you free reign to charge as many as you want in that way? Well, Your Honor, 924C, and I think the First Step Act speaks to this issue. Its very existence speaks to this issue. That is a statute that calls for a modicum of prosecutorial discretion. And the Department of Justice has policies on this, and they include limitations on that. We ordinarily do not charge unless there's multiple predicates, and we ordinarily do not charge unless there are multiple uses, carriages, or possessions. In terms of the details of that thinking, I probably should reserve my right to remain silent. And I certainly understand that. And in this case, it seems like it was an appropriate sort of exercise of it. I just was curious. Yes, Your Honor. And under the plain error standard, I think with Kahn, even without Kahn, this is the kind of thing that a jury instruction would have cured. The merger issue is really, it's a remedy for a jury instruction, or a, I think in the defense, in the reply brief, there's a comment about a verdict form not being a jury instruction. There are some decisions treating them as pretty much the same for purposes of Rule 30, which is you have to preserve it. Can I give you, just make sure you have a chance to respond on the First Step Act? Oh, sure. That's where I was going to go. And just this clarification point, right? A big part of the defendant's argument is the title says clarification. If it's not changing the law, if it's just clarifying the law as it always was, it has to apply on appeal. Sure, Your Honor. I think there's a couple things. To answer, I think it was Judge Waddlebaum's question, a title does not trump the text of the statute. That's, we cited the Brotherhood of Railroad Trainmen case for that, but there's plenty other Supreme Court cases that say basically the same thing. Well, but then, but your colleague says you don't have to trump anything. You can try to read the text so it's consistent with the text. I don't think that's really possible. It says it shall apply to any offense that was committed before the date of enactment of this act if a sentence for the offense has not been imposed as of such date of enactment. If it applied to all offenses, that would be completely superfluous. That would be a text of the statute, an entire section of the statute, really, subsection 403B, that would not really have any effect. I also want to note that it's not particularly useful to, it doesn't really make a lot of sense to have a statute that says, you know, you have a statute and you're changing what that statute that still exists and hasn't changed is interpreted to mean. But when you're talking about a statute, ordinarily the Supreme Court doesn't accept the idea that what a subsequent Congress says about an earlier Congress's intent is particularly good evidence. And in this case, I think it's particularly true. Because after Deal in 1993, a few years later in 1998, Congress amended that statute. And what they did was they increased the penalty for a second 924C from 20 years to 25 years. That suggests that Congress in between Deal and today did not think that it was too harsh. And they didn't think that Deal was incorrect. And Deal said, it's unambiguous. So what we're really talking about is what the 1968 Congress did. And the 2018 Congress really cannot speak to, well, 50 years ago, we meant something different. I also want to answer Judge Harris's question about subsequent decisions. I think there are three decisions that actually talk specifically about 403B from Courts of Appeals. One is from this Court, United States v. Melvin. It's unpublished. 777 Fed Appendix 652. This is quoting from it. Congress expressly limited the retroactivity of that provision to offenses for which the sentence was not yet imposed as of the First Step Act date of enactment, citing Section 403B. And then United States v. Brown in the Second Circuit says the same thing. And United States v. Purvis in the Fifth Circuit, same thing. So if this Court agreed with us, it would be joining the Second and Fifth Circuit. And it's a published opinion confirming its earlier decision from about a month ago. Ultimately, I think the question comes down to the plain language of the text of the statute. It's helpful that it's consistent with what Dorsey said is the ordinary practice. And consistent with how other courts have interpreted it. We do have the other issues we've addressed in our brief. If the Court has any questions, I'm happy to answer them. But if not, I'll yield the balance of my time back to the Court. Thank you. Briefly, Your Honors. As for Conn, we do think the fact that that was a bench trial is significant in that case. Because you can presume that the judge knows the law much more than the jury. And while there wasn't a special verdict for him, we've cited this Court's decision in United States v. Ryan, which is 206F3D349, where it puts the burden on the government to ask for a special verdict in this sort of situation. Otherwise, that was where there could have been two possible drugs involved because the government didn't ask for a special verdict. And they had this in the lesser of the drugs was found. And so the government didn't ask for a special verdict. It had control of the indictment. It presented the evidence. And so based on how this was indicted, the evidence at trial, and then the lack of a special verdict, all we can know is the jury found the use of one gun at one time. But, and I ask the question, but one of the things about that is Conn seems to say, you know, there's two points as I read it. One is, you know, even if you have just one incident, as long as you have multiple, you know, non-identical predicate offenses, you know, that satisfies, you know, the law there. And then if you have multiple uses, you don't necessarily have to align them up properly on the good housekeeping sort of issue. It seems like footnote 11 bears more on the good housekeeping issue than the first point. And we believe that the way the law has developed in this circuit and elsewhere is they were punishing choices of use. And so if it's one use on one day and one time, then we believe there can only be one 924C conviction even before the court. We'd have to over, we'd have to, Conn binds us on that, right? I mean, how do we? In Conn that wasn't necessary for the finding because they said that the judge found, so you wouldn't have to overrule it. It would be limited to the facts of that case. Aside from the Conn, very briefly on the First Step Act issue, in United States v. Clark, this court, the Sixth Circuit did apply the safety veil provision, which in the safety veil had almost identical sentence imposed language. And this court did apply that to cases on, not this court, the Sixth Circuit did apply that to cases on direct review. We think that that reason is very similar to what's happening here. Can you respond to his argument in essence that whatever the motive of the, you know, First Step Act Congress for claiming that they were clarifying, their sort of interpretation of either the 1998 or the 50 year ago Congress is not very probative for us of what was intended or what happened that many years ago? Yes, the Supreme Court has said both that the subsequent legislation's declaration of intent of a previous conduct, Congress's intent is entitled to great weight. It also has said that the title, while it's not dispositive of everything, is very clear. So Red Lion Broadcasting v. FCC is the case where the Supreme Court said the subsequent legislation declaring the intent of an earlier Congress is entitled to great weight in statutory construction. And here it's, you look at the congressional record from 1968 and that description of intent is entirely consistent with what the First Step Act Congress said. And while the titles don't control everything, even... But the 98, but that doesn't help you on the 98, which is, you know, post-Supreme Court's interpretation. And so in that, and for that, I would cite the court, to this court's decision in Moore v. Harris, that was the Black Lungs Benefit Act. And in that case, they did apply the clarification, even though Congress tried to say it wasn't a clarification. And in doing so, they specifically rejected the fact that Congress had made other changes and not changed that. In the meantime, they specifically rejected the argument that by not changing, this court specifically rejected that by not making changes when they made other changes, they were accepting. And they, so in that case, there was a minor, and the question was whether or not he qualified for benefits because he was self-employed under the old version of the act. The administrative agencies had said no, and that interpretation had been accepted by the courts. It eventually changed while this defendant's case was on direct review. The Fourth Circuit went and said, even though Congress tried to say it was changing it, looking at the congressional record and everything, it's clear it was a clarification, so it applied to his case. And they rejected the argument that because administrative agencies had been interpreting in that way, and other parts of the act had been changed, that that still didn't apply, that that meant that Congress had accepted their interpretation. Thank you. Thank you, counsel. All right. We will come down and greet counsel, and then we will hear our next case, Baker v. Baker.
judges: Pamela A. Harris, Julius N. Richardson, A. Marvin Quattlebaum Jr.